# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH L. THOMAS** | ) | |
| | ) | **CIVIL ACTION NO:** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **IMERYS CARBONATES, LLC** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to the Americans with Disabilities Act (hereinafter referred to as "ADA"), the Americans with Disabilities Act Amendments Act (hereinafter referred to as "ADAAA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by 42 U.S.C. § 12101 *et seq.* and the ADA & ADAAA, providing injunctive and other equitable relief against disability discrimination in employment.

1

## II.  PARTIES

2. Plaintiff, Kenneth L. Thomas ("Thomas" or "Plaintiff") is a citizen of the United States and is a resident of Sylacauga, Alabama.  Plaintiff began his employment with Defendant on or about September 5, 1995 as an Stacker.

3. Defendant, Imerys Carbonates LLC ("Imerys" or "Defendant"), owns and operates a carbonates mine and is subject to suit under the Americans with Disabilities Act (hereinafter referred to as the "ADA") and the Americans with Disabilities Act Amendments Act (hereinafter referred to as the "ADAAA").

## III. ADMINISTRATIVE PROCEDURES

4. Plaintiff hereby adopts and realleges paragraphs one (1) through three (3) herein above as if fully set forth herein.

5. Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination that occurred at the Imerys location in Sylacauga, Alabama.

6. This action seeks to redress the unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a habit and/or practice of discriminating against the Plaintiff and others similarly situation on account of disability.

7. On March 10, 2015, within 180 days of the last discriminatory and retaliatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") (Attached hereto as Exhibit A).

8. The EEOC issued a Letter of Determination on February 3, 2017, finding that the evidence obtained during the investigation established that there was reasonable cause to find the Plaintiff was discriminated against on the basis of his disability, in violation of the ADA (Attached hereto as Exhibit B). After conciliation failed, the EEOC issued Notice of Right to Sue (Conciliation Failure) (Attached hereto as Exhibit C). It was mailed by the EEOC to the Plaintiff on or about May 2, 2017, and Plaintiff filed suit within ninety (90) days of receipt of his Dismissal and Notice of Rights.

9. All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

### IV. FACTS

10. Plaintiff hereby adopts and realleges paragraphs one (1) through nine (9) herein above as if fully set forth herein.

11. Plaintiff, Kenneth L. Thomas, began working for the Defendant on September 5, 1995 as a Stacker and remained employed there until his termination on September 18, 2014.

12. During his nineteen (19) years of employment, Plaintiff was never disciplined for any reason until September 12, 2014 when charged with insubordination, leading to his termination on September 18, 2014.

13. In September 2014, Plaintiff was earning $17.97 per hour regular time and $26.96 per hour overtime, as a Semi-Bulk Operator in the Packaging & Shipping Department. Further, he had benefits of health insurance, vision insurance, dental insurance, vacation pay, holiday pay and participation in a 401(k) plan.

14. In February 2012, Plaintiff was diagnosed with diabetes mellitius. In order to manage his diabetes, Plaintiff had to eat periodically to mitigate the symptoms of diabetes.

15. When Plaintiff was diagnosed with diabetes in 2012, he had to be out of work for approximately a week. At that time, Plaintiff told Wayne Whitley, Supervisor of the Packaging & Shipping Department, and Jack Holley, Manager of the Packaging & Shipping Department, about his diagnosis of diabetes and the need for him to eat periodically to mitigate the symptoms of his condition.

16. When Plaintiff needed to eat to manage his diabetes, he did not comment to the Supervisor that his blood sugar was low or that his diabetes required him to eat something at the time. The Supervisor knew why Plaintiff had to eat at certain times so there was no reason to elaborate as to why he needed something to eat.

17. On hot days, the heat leads to a drop in Plaintiff's blood sugar. During the Summer of 2014, Plaintiff made requests to eat during hotter days without mentioning his diabetes or low blood sugar because he didn't want to mention his condition in the presence of co-workers.

18. His Supervisor already knew of his condition and the need for Plaintiff to eat periodically. His Supervisor knew that a request from Plaintiff to eat was "code" that Plaintiff's blood sugar was low.

19. Approximately a week before September 12, 2014, Defendant's Human Resource Manager, Anessa Osborn, met with Plaintiff and co-employees of Plaintiff's, John Burton (also diabetic), Reggie Wilson and Rodney Thunderbird. During that meeting Plaintiff and Mr. Burton told Ms. Osborn that they were diabetic.

20. When Ms. Osborn from Human Resources met with Plaintiff and his co-employees, she informed Plaintiff and his co-employees that diabetes was a

5

disability.  However, no information was given to Plaintiff or his co-employees on how to request an accommodation.

21. If Plaintiff had known that he had to request an accommodation by telling Defendant that his blood sugar was low or he was nauseated and shaky every time he needed to take a break to eat something so that he could minimize the symptoms, he would have done so.

22. Defendant knew that Plaintiff had diabetes and knew that, as a result, he had to periodically eat.  When Plaintiff's blood sugar dropped, he would tell Defendant he needed to eat which was understood by all to mean that he was experiencing symptoms due to his diabetes and requesting the accommodation of eating.

23. Prior to the meeting with Ms. Osborn approximately a week before September 12, 2014, Plaintiff had never told her or anyone other than his Supervisor and Department Manager that he suffered from diabetes.

24. Prior to the meeting with Ms. Osborn, Plaintiff had never had any issues regarding being given the accommodation of eating.

25. On September 12, 2014, an inspector from the Mine Safety and Health Administration ("MSHA") was at Defendant's business to conduct inspections of

certain equipment. One piece of equipment the representative wanted to inspect was the sweeper.

26. Terry Ingram, Lead Man in the Packaging & Shipping Department, asked Marcellus Jackson, an employee in the Packaging & Shipping Department, to take the sweeper to the alley for the inspector from MSHA to inspect.

27. Mr. Jackson initially refused to take the sweeper to the alley. No action was taken against Mr. Jackson for refusing to take the sweeper to the alley. Mr. Ingram did not go to Wayne Whitley, Supervisor of the Packaging & Shipping Department, to have him speak to Mr. Jackson about taking the sweeper to the alley.

28. On September 12, 2014, Plaintiff started feeling jittery at approximately 8:30 a.m. due to his diabetes. Plaintiff's break was scheduled for 9:00 a.m. At approximately 8:55 a.m., Plaintiff's symptoms had increased and he knew he had to get something to eat as soon as possible.

29. After Mr. Jackson's refusal to take the sweeper to the alley, at approximately 9:00 a.m., Terry Ingram, the Lead Man, told Plaintiff that he needed to take the sweeper to the alley so that the MSHA representative could inspect it.

30. Plaintiff told Mr. Ingram that he "needed" to eat something first and that he would take the sweeper after he ate. At no time did Plaintiff refuse to take the sweeper to the alley. There were other employees in the Break Room by that

time so Plaintiff did not mention his diabetes or low blood sugar as being the reason he needed to eat prior to moving the sweeper.

31. Mr. Ingram went to Mr. Whitley, Supervisor of the Packaging & Shipping Department, to report that he had told Plaintiff to move the sweeper and that Plaintiff had said he "needed" to eat first.

32. Mr. Whitley went to the Break Room and told Plaintiff to move the sweeper. Plaintiff told Mr. Whitley that he "needed" to eat first. Prior to September 12, 2014, Mr. Whitley had always understood that Plaintiff's request to eat meant Plaintiff was suffering from symptoms due his diabetes and was requesting the accommodation of eating to relieve those symptoms. At no time did Plaintiff refuse to move the sweeper.

33. Mr. Whitley continued to tell Plaintiff to move the sweeper.

34. Plaintiff told Mr. Whitley that he "needed" to eat something and then he would move the sweeper. There were other employees in the Break Room by that time so Plaintiff did not mention his diabetes or low blood sugar as being the reason he needed to eat prior to moving the sweeper.

35. Mr. Whitley told Plaintiff that "you're going to do it now."

36. Mr. Jackson, who had previously refused to move the sweeper with no repercussions, walked in the Break Room and heard the conversation between Plaintiff and Mr. Whitley.

37. At that time, Mr. Jackson decided to obey the previously refused instruction to move the sweeper. Mr. Jackson moved the sweeper.

38. Mr. Jackson does not suffer from a disability and/or perceived disability.

39. After Plaintiff told Mr. Whitley that he "needed" to eat prior to moving the sweeper, Mr. Whitley told him to go home and that he was suspended without pay pending further investigation and possible additional disciplinary action.

40. Plaintiff was charged with insubordination even though he never refused to follow the instruction of Mr. Ingram or Mr. Whitley to move the sweeper. Rather, he asked for the accommodation to be allowed to eat prior to moving the sweeper.

41. Plaintiff's request for the accommodation of eating was denied.

42. Plaintiff was suspended without pay and then terminated after making the request for the accommodation of eating prior to moving the sweeper on September 12, 2014.

43. Plaintiff was discriminated against due to a disability and/or perceived disability and was retaliated against for engaging in protected activity when he objected to the discrimination. When Plaintiff told his Supervisor, Wayne Whitley, about his need to periodically eat to mitigate the symptoms of his diabetes, he put Defendant on notice of his need for an accommodation of eating.

44. Between September 12, 2014 and September 18, 2014, Human Resource Manager Anessa Osborn conducted an investigation.

45. During the investigation, Ms. Osborn took statements. She took the statement of Marcellus Jackson. Mr. Jackson stated that Plaintiff told Mr. Whitley that he (Plaintiff) was not refusing to move the sweeper. Rather, he said "I'm telling you I'll do it when I get through eating."

46. Mr. Jackson also stated that Terry Ingram had previously asked him to move the sweeper and that he had said "no." Mr. Jackson said that if Mr. Ingram asked him again he would have done it "because he was just messing with him."

47. While Plaintiff was asking for the accommodation of eating prior to moving the sweeper, Mr. Jackson, a co-employee who did not suffer from a disability, refused to move the sweeper because he was "just messing with" Mr. Ingram.

48. At the conclusion of the investigation, Defendant concluded that Plaintiff had refused to perform the task assigned to him despite overwhelming evidence to the contrary. Defendant then terminated Plaintiff for insubordination after nineteen (19) years of employment with no prior disciplinary issues.

49. On March 10, 2015, Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination based on disability and retaliation.

50. After investigation of Plaintiff's charge by the EEOC, it issued a Letter of Determination on February 3, 2017. The EEOC found reasonable cause to conclude that Plaintiff was discriminated against on the basis of his disability in violation of the ADA.

51. On May 2, 2017, after failure of conciliation efforts by the EEOC, the EEOC issued a Notice of Right to Sue (Conciliation Failure).

### V. STATEMENT OF PLAINTIFF'S CLAIMS

#### COUNT ONE

**Plaintiff's Claims of Disability Discrimination Pursuant  
Pursuant to the ADA and ADAAA**

52. Plaintiff adopts and realleges paragraphs one (1) through nine (9), paragraphs 12, 14-23, 26, 28-29, 31-40, 42-43, 45, 48, and 49-50 as if fully set forth herein.

53. Prior to September 12, 2014, Plaintiff was a good long-term employee of Defendant, never having been disciplined in his nineteen (19) years of employment.

54. In 2012, Plaintiff was diagnosed with diabetes mellitius and was out of work for a week due to complications from the diabetes. Plaintiff informed his Supervisor and the Manager of his department about his diagnosis and his need to eat periodically to mitigate the symptoms of his condition.

55. Prior to September 12, 2014, management did not require Plaintiff to state the reason for needing to eat periodically as they understood it was due to his diabetes.

56. Approximately one week prior to September 12, 2014, Plaintiff attended a meeting with Defendant's Human Resources Manager. At that meeting, the Human Resources Manager informed Plaintiff and others that diabetes was considered a disability. However, the Human Resources Manager did not inform Plaintiff or others about how to request an accommodation. At that time, Plaintiff informed the Human Resources Manager of his diabetes for the first time.

57. On September 12, 2014, an inspector from MSHA was at Defendant to conduct inspections of certain equipment. Lead Man Terry Ingram asked Marcellus Jackson to move the sweeper to the alley for inspection. Mr. Jackson, who has no

disability and is not perceived to have a disability, refused to do so. No action was taken against Mr. Jackson at that time for his refusal to move the sweeper.

58. Mr. Ingram then went to Plaintiff who was in the Break Room eating a snack because he had started to feel jittery due to his diabetes. Mr. Ingram told Plaintiff to move the sweeper and Plaintiff said that he "needed" to eat first and then he would move the sweeper. Mr. Ingram then went to the Supervisor, Wayne Whitley, and reported that he had told Plaintiff to move the sweeper and Plaintiff did not comply.

59. The Supervisor then went to the Break Room and told Plaintiff to move the sweeper. Plaintiff told the Supervisor that he "needed" to eat something first and then he would move it. Mr. Whitley told Plaintiff to go home and Plaintiff was suspended without pay pending further investigation and potential additional disciplinary action.

60. Defendant conducted an investigation. Despite an eyewitness stating the Plaintiff never refused to move the sweeper but, rather, stated that he "needed" to eat something first, Defendant concluded that Plaintiff was insubordinate and terminated him.

61. Plaintiff was sent home, suspended without pay and terminated in violation of the ADA and ADAA, because of his disability and/or perceived

13

disability and because of his request for a reasonable accommodation. Plaintiff suffers from a disability that affects one or more major life functions.

  62. Plaintiff was fully capable of performing all of the job functions of his position, as well as other available positions, with a reasonable accommodation, and was, therefore, a qualified person within the meaning of the ADA and ADAAA.

  63. Plaintiff has been discriminated against because of his disability and/or perceived disability, in that the Defendant suspended him without pay and then terminated his employment.

  64. Plaintiff avers he has no plain, adequate or complete remedy to redress the wrongs alleged herein, and this suit for reinstatement, injunctive relief, and declaratory judgment is his only means of securing adequate relief.

  65. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

  66. Plaintiff has been discriminated against in his suspension without pay, his termination and other conditions of employment, in violation of the ADA and ADAAA. Plaintiff has been discriminated against on the basis of his disability, and/or on the basis of Defendant's perception that Plaintiff had a disability and/or due to Defendant having a record of Plaintiff's disability.

67. As a consequence of Defendant's discrimination against Plaintiff, Plaintiff has suffered lost wages and benefits, embarrassment, humiliation, stress, emotional distress, mental anguish and other damages.

68. The Plaintiff has satisfied all administrative prerequisites to bring this claim.

## COUNT TWO

### Statement of Plaintiff's Retaliation Claims

69. Plaintiff adopts and realleges the allegations of paragraphs one (1) through nine (9), paragraphs 12, 24, 27, 35, 38-40, 42, 43 and 47-49 as if fully set forth herein.

70. Prior to September 12, 2014, Plaintiff had never been disciplined for any reason during his nineteen (19) years of employment with Defendant. From the time Plaintiff was diagnosed with diabetes in 2012 and prior to September 12, 2014, Plaintiff had been allowed the accommodation of eating when he started to experience complications from diabetes.

71. A co-employee who did not suffer from a disability and was not perceived as disabled refused to move a sweeper when requested to do so by a Lead Man. The Lead Man did not go to the Supervisor about the non-disabled co-

employee's refusal to move the sweeper.

72. Rather, the Lead Man went to Plaintiff who was in the Break Room eating in order to mitigate the symptoms of his diabetes. Plaintiff did not refuse to move the sweeper when asked to do so by the Lead Man. He told the Lead Man that he needed to eat first and then he would move the sweeper. The Lead Man went to the Supervisor to report Plaintiff. The Supervisor came into the Break Room and told Plaintiff to move the sweeper right then. Plaintiff told him that he needed to eat first and then he would move the sweeper.

73. After asking for the accommodation of eating and having it denied, the Supervisor retaliated against Plaintiff by sending him home and suspending him without pay pending further investigation.

74. At the conclusion of the investigation, Defendant concluded that Plaintiff had refused to perform the task assigned to him despite overwhelming evidence to the contrary. Plaintiff was terminated for insubordination.

75. Plaintiff avers that he has been suspended without pay, terminated, disciplined, harassed, subjected to different terms and conditions of employment, and subjected to other adverse employment action for engaging in protected activity, and there is a causal link between Plaintiff engaging in protected activity and the adverse action he suffered.

76. Plaintiff had a good work record for nineteen years until he reported his need for an accommodation in 2012 and his continued need for the accommodation of eating on September 12, 2014. When he reported his need for an accommodation on September 12, 2014, his supervisor denied the accommodation, and when he insisted that he take a break to eat (his accommodation), Plaintiff's Supervisor subjected him to different terms and conditions of employment.

77. Plaintiff has been retaliated against in violation of the ADA and the ADAAA. The Defendant has a habit and/or practice of retaliating against employees that engage in protected activity.

78. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for injunctive relief and declaratory judgment is his only means of securing adequate relief.

79. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful policies and practices set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

(a) Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by ADA and ADAA;

(b) Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating ADA and ADAA;

(c) Grant Plaintiff an order requiring Defendant to make him whole by granting appropriate declaratory relief and injunctive relief; and

(d) Plaintiff prays for such other, further, different or additional relief and benefits as justice may require including such further necessary or proper relief as is needed.

**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**

/s/Larry R. Mann
LARRY R. MANN
ASB-6625-m64l
Attorney for Plaintiff

**OF COUNSEL:**
**Law Office of Larry Mann**
Larry R. Mann, Esq.
215 Richard Arrington Jr. Blvd. North
Suite 701
Birmingham, Alabama 35203
Tel: (205) 326-6500

Fax: (205) 324-8660
E-mail: LarryMann@aol.com

/s/Prisca M. Rollins
PRISCA M. ROLLINS
ASB-6535-D67P
Attorney for Plaintiff

**OF COUNSEL:**
**Law Office of Larry Mann**
Prisca M. Rollins, Esq.
215 Richard Arrington Jr. Blvd. North
Suite 701
Birmingham, Alabama 35203
Tel: (205) 326-6500
Fax: (205) 324-8660
E-mail: mannefile@gmail.com

**PLAINTIFF'S ADDRESS:**
KENNETH L. THOMAS
401 N. Louisville Avenue
Sylacauga, AL 35150
c/o LARRY R. MANN
215 North Richard Arrington, Jr. Blvd.
Suite 701
Birmingham, Alabama 35203

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**
Imerys Carbonates LLC
2412 Hill Road
Sylacauga, AL 35150